[Civ. No. 2740.   Second Appellate District, Division One.—February 6, 1920.]

## C. HARPOLD, Respondent, v. THOS. A. SLOCUM et al., Appellants.

[1] NOVATION—GIVING OF NOTE IN EXTINGUISHMENT OF INTEREST IN PROPERTY—EVIDENCE.—In this action there was ample evidence upon which to base a finding that the promissory note sued upon had been given in extinguishment of any right that the plaintiff had under a previous agreement to the proceeds to be derived from the sale of a certain house and lot, title to which stood in the name of one of the defendants and which had been taken in exchange for a garage that had been owned jointly by the plaintiff and defendants, and the novation worked by the acceptance by plaintiff of the promissory note operated to cancel any interest of the plaintiff in the property or the proceeds therefrom, and the fact that the plaintiff may have retained in his possession his copy of the original agreement was not evidence of a lack of consummation of the agreement effected by the note transaction.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Leslie R. Hewitt, Judge.   Affirmed.

The facts are stated in the opinion of the court.

James R. Jaffray for Appellants.

Andrews, Toland & Andrews for Respondent.

JAMES, J.—Appeal from a judgment entered in favor of the plaintiff upon a promissory note alleged to have been executed by the defendants.   The note was set out in full in the complaint and its execution was not denied by the defendants, except that it was affirmatively alleged in the answer that the note was given in connection with a separate contract as security only to the plaintiff that the defendants, parties to the alleged separate contract, would perform the obligations imposed upon them thereunder. This alleged separate contract was made on the second day of December, 1909, and the note on November 28, 1910. In so far as the facts relating to the transaction were agreed to, they show: That prior to December 2, 1909, plaintiff

and the defendants had jointly owned a garage in a California town. In addition to his interest in the garage business, the plaintiff held a mortgage upon the building in which the business was being done to secure payment to him of the sum of one thousand dollars. It being mutually agreeable to all, an exchange was effected by trading the garage property for a house and lot in the city of Los Angeles, title to which was taken in the name of defendant Thomas A. Slocum. Thereupon an agreement was signed by the three, which in its material parts provided as follows:

"That all three of the parties are the owners of a certain house and lot, on Twenty-fifth street near San Pedro, for which they have traded the garage in Santa Paula, on which building C. Harpold owned a mortgage for one thousand (1000) dollars; therefore be it understood and agreed between all parties hereto, that as consideration for surrendering the mortgage, aforesaid, the said C. Harpold shall receive as an interest in such property, or out of any money received for the sale of the aforesaid house and lot, or any trade that is made on or with said property as a basis, the first thousand (1000) dollars after which all the remainder shall be divided among the several parties hereto in equal parts. It is understood and agreed among the three parties to this agreement that for convenience in handling the deed shall be made out in the name of Thos. A. Slocum, though the ownership shall be held in all three in the ratio aforesaid and that the said Thos. A. Slocum shall act as Trustee."

It has been noted that the promissory note was made in November, 1910, almost a year after the exchange of properties was effected and the contract referred to executed. At this point the contentions of the plaintiff and defendants and the testimony as to the facts concerning the execution of the note are divergent. Plaintiff testified as follows: "At the instance of Tom Slocum we traded the garage for the property in Los Angeles. This contract we have been talking about was made at the time we traded for the Los Angeles property. The understanding according to the contract, based on our dealings at Santa Paula, was, Slocum wanted a power of attorney or whatever you call it. He wanted to sell the property or do something with it, and that is the reason they gave me that contract

—so when the property was sold I was to have the first one thousand dollars and the rest of it was to be divided up in three equal shares between the three of us. That is the property referred to as being on 25th Street near San Pedro. Well, it must have been something like a year after that I had been down in Nevada and was going back. I stopped at their office and they made the proposition they would give me $1,750 for my part and leave them the rest of it; that they would give me a note for $1,750, payable in one year. They said they thought by that time they could dispose of the property. I told them that was satisfactory to me. They didn't say anything about the contract then that we had before. I supposed, when I got the note, that was the last of it, that everything belonged to them.'' On cross-examination the plaintiff was asked whether he still retained the original contract, and he said that he thought he had it. Asked whether he was willing to turn it over, he said he didn't think he was. When asked why he didn't give up the contract when they gave the note, he said: ''They didn't ask me for it. I didn't suppose it was any good after I got the note. I supposed everything was canceled. Q. Will you now give it up? A. Under one consideration. Q. What is that consideration? A. Pay the note and interest.'' Defendant Thomas A. Slocum testified that the occasion for the giving of the note was that Harpold was dissatisfied with the condition of affairs and ''wanted something tangible, I suppose.'' He further testified: ''Q. How did that note come to be made in the sum of $1,750? A. That is what we figured that the third—Mr. Harpold was entitled to one thousand dollars out of everything we made, and the $750 was what I considered the property would bring, that is, three times $750 after deducting the mortgage of three thousand two hundred dollars and this one thousand dollars. Mr. Harpold spent more than that. We all did. The building at Santa Paula cost us something like one thousand two hundred dollars to one thousand five hundred dollars, . . . and besides that Mr. Harpold must have put in about four hundred dollars cash into this house, as well as my brother and myself.'' When asked what had become of the house and lot in Los Angeles, Thomas A. Slocum admitted that he had disposed of it. The record shows that the following then occurred: ''Q. What has it been turned into?

A. It has been turned into other properties. Q. What are the properties? [No answer.] Q. What is the answer? A. I have not given any yet. I was trying to decide where the properties were. That is something that would have to be worked out in detail. Q. You ought to know where it is, hadn't you? A. I suppose so. Q. Now, where is it? A. Well, it is not in tangible form right now. Q. What form is it in? A. In undivided interests that would have to be figured out. I am not ready to give a statement to-day on it.'' [1] It is clear beyond question that there was ample evidence upon which to base a finding that the promissory note had been given in extinguishment of any right that the plaintiff had to the proceeds to be derived from the sale of the house and lot in Los Angeles. Not only was the plaintiff's testimony positive to this point, but there was the further persuasive circumstance that the promissory note was not made simultaneously with the contract, but was dated nearly a year thereafter. Practically the whole contention of counsel for appellant is that because the plaintiff had not delivered up the copy of the contract of date December, 1909, and because he expressed himself as unwilling at the trial to so deliver it up, it could not be said that he had ever legally accepted the note obligation of the defendant in lieu of his right to share in the proceeds of the sale of the house and lot. While it does appear as a fact that Thomas A. Slocum was to hold the property as trustee, it also appears that he had power to dispose of the same and would be chargeable to account only for the share of the proceeds to the plaintiff and the other Slocum. Under such circumstances, we think that the novation worked by the acceptance of the promissory note operated to cancel any interest of the plaintiff in the property or the proceeds therefrom, and that the fact that the plaintiff may have retained in his possession his copy of the original contract was not evidence of a lack of consummation of the agreement effected by the note transaction. The plaintiff himself looked to the obligation of the defendants upon the note alone, and by his acceptance of the note and his acts with relation thereto he would be conclusively estopped from claiming that the earlier contractual obligations assumed still survived. He himself testified: ''I supposed, when I got the note, that was the last of it, that everything belonged

to them." Thomas A. Slocum, the only one of the defendants who testified, admitted that he had disposed of the house and lot; and never made any accounting therefor to the plaintiff, and, surprising as it may appear, was unable to tell the court what property he had gotten in exchange for the house and lot, contenting himself generally with the statement that "it is not in tangible form right now." We are scarcely able to see how a trial court would have justified a judgment different from that entered in the case. The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.